IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FRANK PRADO-HERNANDEZ<br>Plaintiff<br><br>v.<br><br>R & B POWER, INC.<br>EDUARDO J. RODRIGUEZ-CALVO<br>Defendants | Civil Num: 2015-cv-<br><br>Age Discrimination in Employment<br>29 U.S.C. §626, *et seq*<br>Wrongful Discharge<br>Retaliation<br>Trial by Jury Demanded |

**COMPLAINT**

MAY IT PLEASE THE COURT:

Now into Court come Plaintiff Frank Prado-Hernandez, represented by the undersigned counsel, and most respectfully states and prays as follows:

**I.    FEDERAL QUESTION JURISDICTION**

This Court has original jurisdiction pursuant 28 U.S.C. § 1331, in that the cause of action of this Complaint arises under the Age Discrimination in Employment Act (the "ADEA"), 29 U.S.C. §626, *et seq*.

**II.   SUPPLEMENTAL JURISDICTION**

This Court has supplemental jurisdiction under 28 U.S.C. § 1367 for the causes of action under Commonwealth of Puerto Rico law pursuant Law 100 of 1959 codified in 29 L.P.R.A. § 146 and Law 115 whistleblower act because this cause of action is so related to the ADEA claim in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

**III.  VENUE**

The United States District Court for the District of Puerto Rico is the proper venue for this action pursuant to 28 U.S.C. §1391 (b)(1) and (b)(2) because this is the District in which defendants reside and in which all of the common nucleus of operative facts giving rise to the claims took place.

**IV.     EXHAUSTION OF ADMINISTRATIVE PROCEDURES AT EEOC**

On 7/2/2014, Plaintiff Frank Prado-Hernandez filed a charge of discrimination against defendant R & B Power, Inc. with the Equal Employment Opportunity Commission ("EEOC") San Juan Office.

More than sixty (60) days have elapsed since Plaintiff filed his charge with the EEOC.

Plaintiff received a right to sue letter dated 3/3/2015 on 3/13/201, and fewer than ninety (90) days have elapsed since Mr. Prado-Hernandez received the same. Copy of this right to sue letter is attached hereto and identified as exhibit 1.

**V     THE PARTIES**

A.     <u>Plaintiff Frank Prado-Hernández</u>

Plaintiff Prado-Hernández, at all moments relevant to this complaint, was sixty three (63) years old at the time he filed his charge of discrimination.

At all times relevant to this complaint, Plaintiff was an employee of defendant R & B Power, Inc. as Credit Manager.

Plaintiff first worked with defendant R & B as a contractor in charge of logistics. Among his duties and responsibilities, plaintiff audited bills of lading, kept logs of entry and exit of trailers and containers, audited bills of lading, served as liaison with maritime carriers negotiating tariffs and settling accounts receivables, served as the liaison with U.S. Customs, among others, between the years 1991 to 2012.

Plaintiff was hired by R & B in February 14. 2012 as Credit Manager.

B.     <u>Defendants</u>

a.     <u>Defendant R & B Power, Inc.</u>

Defendant R & B Power, Inc. (from hereon, "R & B") , is a corporation engaged in interstate commerce and is in the business of selling commercial, industrial and agricultural heavy equipment such as tractors, harvesters, diggers, bulldozers, and the like. R & B is the Puerto Rico distributor of CNH Holland, Alamo Industrial and Link Belt Construction Equipment.

Crucial in the business relation between R & B and CNH Holland is the fact that the second sells to the first their equipment on credit.

Defendant R & B Power, Inc., has over twenty (20) employees.

The President of R & B Power, Inc. is co-defendant Eduardo J. Rodriguez-Calvo.

R & B is a spin-off of Clemente Santiesteban, Inc. Clement Santiesteban, Inc. was indicted and plead guilty for violation of 18 U.S.C.A. sec. 1001(a) (false statements or entries) when filing U.S. Customs forms.

In 1997, the Supreme Court of Puerto Rico found that Clemente Santiesteban, Inc., and R & B were *alter egos*. **Casco Sales v. Municipio de Barranquitas**, 172 D.P.R. 825 (2007)

At the time Clemente Santiesteban, Inc. pled guilty to this federal charge, its president, Pedro Casanova, also pled guilty. Co-defendant Eduardo Rodriguez-Calvo was the Vice-President of Clemente Santiesteban, Inc.

b.   <u>Defendant Eduardo J. Rodriguez-Calvo</u>

Eduardo J. Rodriguez-Calvo is the President of R & B Power, Inc. and the immediate supervisor of plaintiff Prado-Hernández.

After Clemente Santiesteban, Inc. pled guilty to government fraud, they were banned by law from participating in government bids.[1] In order to bypass this prohibition and continue doing business with government agencies, defendant Rodriguez-Calvo purchased Rico Tractor, Inc. with Pedro Casanova. Defendant Rodriguez-Calvo was the Vice-President of Rico Tractor, Inc. with Pedro Casanova as President until the year 2002 when R & B was incorporated.

**VI.   OPERATIVE FACTS**

1. Plaintiff was hired by R & B as Credit Manager in 2/14/2012.
2. As Credit Manager, plaintiff acquired personal knowledge of R & B's accounting

---

[1] *Prohibition Against Granting Bids or Contracts to Persons that Have Been Convicted of Certain Crimes*, 3 L.P.R.A. § 928b.

systems.

3. As Credit Manager, it was plaintiff's responsibility to process sales on credit and collect accounts receivables.

4. At all times since plaintiff was hired until the date of his unlawful dismissal in 6/19/2014, his job performance was above average, and never was the subject of a negative or adverse evaluation in writing. For example, when plaintiff began working for R & B, he quickly collected $49,686.00 from the Puerto Rico Electric Power Authority that was four (4) in arrears; $208,127.00 from the Municipality of Guayama that was three (3) months in arrears. And when R & B sold forty four (44) tractors to the Aqueduct Authority, plaintiff timely collected payment at a time when said agency seldom timely paid.

5. Also, plaintiff's experience in shipping matters and Customs saved the day to R & B when a shipment of tractors and diggers with engines made in France were mislabled, requiring their return to the port of origin. Plaintiff negotiated with Customs, the E.P.A. and the engine manufacturer in France so that the engines could be re-labeled without having them returned. Plaintiff saved R & B thousands of dollars in fines, shipping and related costs.

6. As time went by working for R & B, plaintiff began to notice certain irregularities in R & B's accounting operations. Plaintiff noticed that R & B had two separate and parallel accounting systems. The first system reflected true transactions as they happened. The second was used for fraudulent purpose that includes Puerto Rico tax evasion, defrauding CNH-New Holland's credit division by manipulating dates of sales in order to avoid paying interest rates and penalties, and conspiring with ineligible farmers to defraud the Commonwealth of Puerto Rico Department of Agriculture by unlawfully requesting and obtaining government subsidies for the purchase of agricultural equipment.

7. Co-defendant Rodriguez-Calvo and Luis Bolivar, at the time relevant to this complaint, Vice-President of R & B, frequently requested from the plaintiff to alter

and re-date the date of sales of equipment in their invoices to defraud CNH Holland in order to avoid the payment of finance interest of accounts that had defaulted. When plaintiff refused to alter the invoices, co-defendant Rodriguez-Calvo got upset for that "loss" and blamed the plaintiff for having to pay finance interest rates and penalties to CNH Holland.

8. Every time co-defendant Rodriguez-Calvo and/or Luis Bolivar tried to engage plaintiff Prado-Hernández in a fraudulent activity, and he refused, co-defendant Rodriguez-Calvo and/or Luis Bolivar created a great deal of tension with the plaintiff, and became upset.

9. Tense situations like the ones described in the previous paragraphs became more frequent and intense as time went by. By the time seven (7) months had passed after his employment with R & B, plaintiff was subject to a hostile work environment created by defendant Eduardo Rodriguez-Calvo against due to his age that lasted until the date of his unlawful dismissal.

10. By the seventh month after plaintiff began working with R & B as an employer, co-defendant Rodriguez-Calvo began questioning plaintiff's work performance with unfounded grounds. The hostility gradually intensified when co-defendant Rodriguez-Calvo began calling plaintiff Prado-Hernández "viejo" ("old man"), and making coments like "eres un zorro viejo" ("you are an old fox"), and other derogatory statements implying that because of his age, plaintiff could not perform his duties and responsibilities. Examples of the existence of a hostile work environment against the plaintiff due to age follows:

11. On June 2013, plaintiff requested vacation time. Co-defendant Rodriguez-Calvo refused with the pretext that it was "collection of money season." Eventually, co-defendant Rodríguez-Calvo authorized plaintiff's vacation after it was evident that there was no pending accounts receivable to collect.

12. Among the statements of poor work performance based on unfounded grounds, on May 5, 2014, co-defendant Rodríguez-Calvo falsely accused the Plaintiff of causing

an overdraft of $67,000.00 by failing to be aggressively collecting money owed in order to avoid using the company's credit line. Four days later, Plaintiff learned that there was never an overdraft with the bank. In fact, co-defendant Rodríguez-Calvo was not aware that wire transfers had been made to R & B's account that had not been posted by the company's comptroller.

13. On November 11, 2013, during a staff meeting, co-defendant Rodríguez-Calvo bad mouthed the plaintiff with insults and foul language blaming the plaintiff for employee Edmundo Goveo's absence. Mr. Goveo's absence in fact was caused by his immediate supervisor, Vice-President Luis Bolivar. Plaintiff had no power to summon Mr. Goveo to that meeting.

14. On December 3, 2013, during another staff meeting, plaintiff was blamed by co-defendant Rodríguez-Calvo for the service (repair) shop's poor performance in a hostile tone of voice. However, plaintiff had no supervisory or any role in the operations of the shop.

15. On December 11, 2013, during a meeting with defendant Rodríguez-Calvo and comptroller Juan Morales, defendant Rodríguez-Calvo addressed plaintiff's alleged and unfounded poor performance. At this time, defendant Rodríguez-Calvo mixed plaintiff's alleged poor performance with him being "viejo" (an old man).

16. On December 20, 2013, during a collections meeting, defendant Rodríguez-Calvo verbally attacked the plaintiff with foul words, and called him again "viejo" various times when claiming that the plaintiff had a poor job performance.

17. On December 24, 2013, plaintiff was again the subject of foul words, insults and unfounded claims mixed with statements claiming that he was having a poor job performance because of his age using the word "viejo".

18. On December 30, 2013, in another meeting where Vice-President Luis Bolivar was present, co-defendant Rodríguez-Calvo stated to the plaintiff that that was his last chance for alleged poor performance collecting accounts receivables, without identifying the accounts in arrears. And again co-defendant Rodríguez-Calvo

blamed this said poor performance to plaintiff's age.

19. On February 17, 2014, co-defendant Rodríguez-Calvo again met with plaintiff to discuss alleged account receivables in ninety (90) days in arrears. At this time, co-defendant Rodríguez-Calvo described plaintiff's work performance as "shit" ("una mierda"). Co-defendant Rodríguez-Calvo use of these foul language was caused by his discriminatory attitude due to his age against the plaintiff.

20. On February 18, 2014, co-defendant Rodríguez-Calvo was upset of a mistake made by the sales department regarding some equipments sold to the Municipality of San Juan, but blamed the plaintiff though he is not in charge of the sales department. When co-defendant Rodríguez-Calvo blamed the plaintiff, he screamed to the (the plaintiff" "estas del carajo".

21. On April 4, 2014, during a collections department meeting, co-defendant Rodríguez-Calvo again criticizes the plaintiff for his poor job performance. This time, co-defendant Rodríguez-Calvo blamed the plaintiff for failing to post an account receivable in the accounting system that was used for fraudulent purposes, when defendants knew that plaintiff refused to participate in fraudulent schemes.

22. On April 29, 2014, co-defendant Rodríguez-Calvo continued with his harassment against the plaintiff due to his age. During another collections department meeting, co-defendant Rodríguez-Calvo falsely blamed the plaintiff for lack of diligence in the process collection of accounts receivables.

23. On May 1, 2014, co-defendant Rodríguez-Calvo called plaintiff to complain that he had failed to send an email to a client. When plaintiff responded that he did, co-defendant Rodríguez-Calvo in a very hostile and disrespectful manner, called plaintiff "embustero" ("liar").

24. On June 11, 2014, co-defendant Rodríguez-Calvo continued his harassment and bullying against the plaintiff that fed the hostile work environment by accusing him of "evading" him, when plaintiff was out of the office in collections efforts.

25. On June 19, 2014, plaintiff had just collected a check for the amount of $205,740.00

from the Commonwealth's Department of Transportation and Public Works when he got a call from Vice-president Luis Bolivar instructing him to return to the office because the check was allegedly not ready. Plaintiff responded that he already had the check. When plaintiff returned to the office with the check, co-defendant Rodríguez-Calvo was waiting for him very upset and furious. Co-defendant Rodríguez-Calvo continued his bullying against the plaintiff by accusing him this time of "stealing" time from the company, that he was considering getting a GPS for the plaintiff to confirm his whereabouts, and that he was an old man with sixty three (63) years of age, that if he needed to fire the plaintiff he would.

26. Suspecting that co-defendant Rodríguez-Calvo was upset because now the $205,740.00 check could not be fraudulently negotiated and posted in their fraudulent ledger, plaintiff reacted to his offensive statements telling co-defendant Rodríguez-Calvo that he was not going to participate in any unlawful conduct, and that if he persisted, he (plaintiff) would have to report defendants' conduct to law enforcement. Then, co-defendant Rodríguez-Calvo yelling, called plaintiff "jaqueton", and then fired him while stating that he was not going to get a job because of his age.

27. On June 20, 2014, plaintiff demanded a letter of termination of employment to R & B.

28. On June 23, 2014, R & B sent a letter to the plaintiff dated June 19, 2014, the day plaintiff was terminated, advising of his COBRA medical insurance rights.

29. The following day, June 24, 2014, plaintiff received a letter from R & B denying he was fired.

30. Via letter dated July 10, 2014, R & B informed the plaintiff that he had not been fired, and that if he did not return to work, it would be understood that he had resigned, notwithstanding the fact that co-defendant Rodríguez-Calvo did fire him, as reflected by R & B's letter dated June 19, 2014 -the day he was fired-informing the plaintiff's right under COBRA, a law that is triggered when an employee is

terminated of employment.

31. At all times relevant to this complaint, co-defendant Rodríguez-Calvo created a hostile work environment against the plaintiff due to his age.

32. Plaintiff at all times exceeded in job performance those required by R & B.

33. Defendants had no grounds of just cause to terminate plaintiff's employment.

34. At all times when defendants claimed that plaintiff's job performance was below standards, those claims eventually proved baseless and unfounded.

35. After defendants terminated the plaintiff, R & B reassigned his job functions, responsibilities and accounts to other younger employees.

## V. CAUSES OF ACTION

### A. First Cause of Action: Age Discrimination Under the ADEA

Plaintiff realleges and incorporates in this Count I paragraphs 1-35.

Plaintiff Frank Prado-Hernandez's age was a determining factor in defendants decision to terminate Frank Prado-Hernandez.

Defendants knowingly and willfully discriminated against Doe on the basis of his age in violation of the ADEA.

### B. Second Cause of Action: Age Discrimination Under Law 100

Plaintiff realleges and incorporates in this Count II paragraphs 1-35.

Plaintiff Frank Prado-Hernandez's age was a determining factor in defendants decision to terminate Frank Prado-Hernandez.

Defendants knowingly and willfully discriminated against the plaintiff on the basis of his age in violation of Law 100 codified in 29 L.P.R.A. § 146.

Defendants are jointly and severally liable to the plaintiff for said unlawful discriminatory conduct.

### C. Third Cause of Action: Law 115 Whistleblower Act

On June 19, 2014, defendants unlawfully terminated plaintiff's employment when he informed co-defendant Rodríguez-Calvo that he refused to engage in unlawful activities and that if he insisted, he would inform law enforcement.

As a direct consequence of plaintiff's warning that he would inform law enforcement, co-defendant Rodríguez-Calvo terminated plaintiff's employment in retaliation, in violation of Law 115.

**WHEREFORE**, Plaintiff Frank Prado-Hernandez respectfully requests the following relief:

Entry of judgment in favor of plaintiff and against Defendants;

1. Back pay;
2. Reinstatement, or in the alternative, front pay;
3. Liquidated damages pursuant to 29 U.S.C. §626(b);
4. Compensatory and punitive damages pursuant Law 115;
5. Compensatory and punitive damages pursuant Law 100;
5. Attorneys fees and costs; and
6. Other such relief as may be appropriate to effectuate the purposes of the ADEA, Law 100 and Law 115.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this June 11, 2015.

LAW OFFICE OF MANNY SUAREZ
G.P.O. Box 367831
San Juan, P.R. 00936-7831
(787) 504-6035
mannysuarezlaw@hotmail.com

S/ Manuel R. Suárez Jiménez
Manuel R. Suárez Jiménez
USDC-PR # 202914
-